UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEVIN AMORUSO and RENEE AMORUSO (per quod),<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>BJ'S WHOLESALE CLUB, INC.; CRESSKILL HILLS, LLC.; JOHN DOES 1-10 (fictitious parties), ABC CORPS 1-10 (fictitious parties), TUV CORPS ROOFING CONTRACTORS 1-10 (fictitious parties), XYZ CORPS PROPERTY MAINTENANCE/ MANAGEMENT COMPANY 1-10 (fictitious parties),<br><br>　　　　Defendants. | Civil Action No. 19-18846 (ES) (MAH)<br><br><br><br><br><br><br><br><br>REPORT AND RECOMMENDATION |

## I. INTRODUCTION

This matter comes before the Court by way of Plaintiffs Kevin and Renee Amoruso's Motion to Remand to the Superior Court of New Jersey, Law Division, Essex County pursuant to 28 U.S.C. § 1447(c). *See* Mot. to Remand, Nov. 8, 2019, D.E. 11. The Undersigned has considered the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth herein, the Undersigned respectfully recommends the District Court grant Plaintiffs' Motion to Remand.

## II. BACKGROUND

This civil action arises from a slip-and-fall at BJ's Wholesale Club No. 94 in Riverdale, New Jersey ("the Property"). *See* Notice of Removal ¶ 2, Oct. 9, 2019, D.E. 1. Plaintiff Kevin Amoruso alleges that he suffered injuries due to a "slippery condition" inside the building. *See*

*id.*, Ex. A, D.E. 1-1 at 3.[1] By way of a complaint filed on April 27, 2019 in the Superior Court of New Jersey, Law Division, Plaintiffs bring negligence claims against Defendant Cresskill Hills, LLC ("Cresskill Hills"), the landlord of the Property; Defendant BJ's Wholesale Club, Inc. (BJ's Wholesale Club"), the tenant of the Property; and various fictitious persons and entities, which include unidentified roofing contractors and property management companies.[2] *See generally id.*, Ex. A, D.E. 1-1 at 3-13.

Plaintiffs first allege, among other things, that Defendants were negligent insofar as they "did not keep the premises in a safe condition"; "caused/created a dangerous and hazardous condition to exist"; "failed to adequately clean a hazardous, slippery walking surface"; "failed to conduct adequate inspection"; "failed to properly water seal and/or otherwise maintain the roof"; and "negligently constructed the roof[.]" *Id.*, Ex. A, D.E. 1-1 at 3-4 ("Count One"). Plaintiffs next aver that Defendants "managed, controlled, operated, maintained, leased and/or were otherwise responsible for the upkeep, operation, cleanliness, quality, maintenance and/or repairs of the premises, including the walking areas/surfaces in and around the area where Plaintiff was caused to fall." *Id.*, Ex. A. at D.E. 1-1 at 6 ("Count Two"). Plaintiffs further allege that Defendants "were responsible for the construction, maintenance, repair, inspection, upkeep, operation, water proofing and/or water sealing of the roof and interior of the property where plaintiff was caused to fall." *Id.*, Ex. A, D.E. 1-1 at 9 ("Count Three"). Finally, Plaintiffs claim that Defendants "owned,

---

[1]  Because Plaintiffs renumber the paragraphs in the Complaint for each separate count, the Undersigned cites to the ECF page numbers.

[2]  The Complaint does not explicitly set forth the landlord-tenant relationship between Cresskill Hills and BJ's Wholesale Club, but rather alleges that both Defendants owned and maintained the Property. *See generally id.*, Ex. A, D.E. 1-1 at 3-13. However, BJ's Wholesale Club asserts in the Notice of Removal that it leases the Property from Cresskill Hills. *See* Notice of Removal ¶ 3. Plaintiffs do not dispute that assertion.

managed, maintained, controlled, and/or were otherwise responsible for property management and/or roof and building construction/repair/inspection/management/maintenance" of the Property. *Id.*, Ex. A, D.E. 1-1 at 11 ("Count Four").

On October 9, 2019, BJ's Wholesale Club removed this action to the United States District Court for the District of New Jersey pursuant to jurisdiction conferred by 28 U.S.C. § 1332(a).[3] *See* Notice of Removal ¶¶ 8-12, 45. Despite a lack of complete diversity among the parties, BJ's Wholesale Club contends that subject matter jurisdiction exists because Plaintiffs fraudulently joined Cresskill Hills as a defendant to prevent removal. *Id.* ¶¶ 30-34. As set forth in the Notice of Removal, BJ's Wholesale Club leased the Property from Cresskill Hills pursuant to a "Triple Net Lease."[4] *See id.* ¶ 3. According to BJ's Wholesale Club, the terms of the Lease unambiguously dictate that Cresskill Hills "had no responsibility for the interior of [the Property], including the location where Plaintiff's alleged incident occurred." *Id.* ¶ 4; *see also id.* ¶¶ 17, 22, 28. BJ's Wholesale Club thus asserts that Cresskill Hills cannot be held liable for Plaintiff's injuries as a matter of law.[5] *Id.* ¶¶ 15-30, 40-42. In support of its position, BJ's Wholesale Club relies in part on Section 7.1 of the Lease. *See id.* ¶ 24. That provision states:

---

[3] Plaintiffs are New Jersey residents. *See* Notice of Removal ¶ 11. BJ's Wholesale Club is a Delaware corporation with its principal place of business in Massachusetts. *Id.* ¶ 12. For purposes of assessing diversity jurisdiction, Cresskill Hills is a New Jersey resident. *See id.* ¶ 30.

[4] Heller-Riverdale, LLC and Waban, Inc. were the original parties to the Lease. *See id.*, Ex. B, D.E. 1-1 at 17. "The Lease was assigned to BJ's Wholesale Club by way of Assignment of Lease on June 28, 1997." Notice of Removal ¶ 3, n.1. Heller-Riverdale, LLC assigned the lease to Cresskill Hills, LLC on September 17, 2001. *See* Mot. to Remand, Ex. C, D.E. 11-3. Under a "Triple Net Lease," the commercial tenant "is responsible for 'maintaining the premises and for paying all utilities, taxes and other charges associated with the property.'" *Geringer v. Hartz Mountain Dev. Corp.*, 908 A.2d 837, 842 n.2 (N.J. Sup. Ct. App. Div. 2006) (quoting *N.J. Indus. Props. v. Y.C. & V.L., Inc.*, 495 A.2d 1320, 1321 (N.J. 1985)).

[5] BJ's Wholesale Club, Inc. contends that removal is timely because Plaintiffs did not effectuate service until September 10, 2019. *See* Notice of Removal, ¶ 9. The Notice of Removal is

> Subject to Landlord's obligation under this Article VII, Tenant shall maintain the Building, including without limitation, all glass and all utility conduits, fixtures and equipment within the Building serving the Demised Premises exclusively which may be necessary to maintain the same, in good repair and condition as the same are in on the Commencement Date . . . . Such maintenance shall include cleaning gutters and downspouts, removing debris from the roof and routine caulking and cosmetic painting of the exterior of the Building, if necessary. From and after the twentieth (20th) anniversary of the Commencement Date, Tenant shall also maintain the roof, the slab floors, the exterior walls, the roof drainage systems, the Service Areas . . . and the structural parts of the Building in good repair and condition as the same are in on such anniversary . . . .

*Id.*, Ex. B, D.E. 1-1 at 34.

Plaintiffs now move to remand this action back to state court for lack of subject matter jurisdiction. *See* Pl.'s Br. in Supp. of Mot. to Remand at 1, D.E. 11-1. For their part, Plaintiffs rely on Section 7.2 on the Lease, which addresses Cresskill Hills's obligations as the landlord:

> Landlord shall maintain until the twentieth (20th) anniversary of the Commencement Date the roof, the slab floors, the exterior walls . . . , the roof drainage system, the Service Areas . . . and the structural parts of the Building in good repair and condition as the same are in on such anniversary . . . . Landlord shall also maintain until the twentieth (20th) anniversary of the Commencement Date, to the extent located within or beneath the slab-floors of the Building and not readily accessible by means of removable panels, access doors or the like, the structural integrity of all wiring, plumbing, pipes, conduits and other utilities and sprinkler fixtures . . . .

---

technically deficient because BJ's Wholesale Club did not include a copy of the summons with its removal papers, thereby making it impossible for this Court to verify the timeliness of removal. *See* 28 U.S.C. § 1446(a). Because Plaintiffs did not challenge that defect in their Motion to Remand, that issue is waived. *See* 28 U.S.C. § 1447(c). Furthermore, the Notice of Removal also fails to clarify whether Cresskill Hills consented or otherwise joined in the removal in contravention of the rule of unanimity. *See* 28 U.S.C. § 1446(b)(2)(A). However, consent to removal is not required if that defendant is fraudulently joined as BJ's Wholesale Club alleges here. *See Balazik v. Cty. Of Dauphin*, 44 F.3d 209, 213 n.4 (3d Cir. 1995).

Notice of Removal , Ex. B, D.E. 1-1 at 34-35.  Accordingly, Plaintiffs submit that Cresskill Hills is a proper party to this lawsuit "because, at the time of the incident, the Lease clearly provides that the landlord was responsible for the roof and other structural parts of the building" on the date of the accident.  Pls.' Br. at 3.  For the reasons that follow, the Undersigned respectfully recommends the District Court grant Plaintiffs' Motion to Remand.[6]

### III.  ANALYSIS

A party may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  "Where a complaint does not raise a question of federal law, a district court may properly exercise subject matter jurisdiction only if the amount in controversy exceeds the value of $75,000 and diversity exists among the adverse parties."  *In re Benicar (Olmesartan) Prods. Liab. Litig.*, 198 F. Supp. 3d 385, 386 (D.N.J. 2016) (citing 28 U.S.C. § 1332(a)).  To invoke diversity jurisdiction, "no plaintiff can be a citizen of the same state as any of the defendants at the time the complaint was filed and at the time of removal."  *Id.* (citing *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 346 (3d Cir. 2013)); *see also Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

"The doctrine of fraudulent joinder represents an exception to the requirement that removal be predicated solely upon complete diversity."  *In re Briscoe*, 448 F.3d 201, 215-16 (3d Cir. 2006).

---

[6]  Prior to the filing of Plaintiffs' Motion to Remand, Cresskill Hills moved to dismiss the claims brought against it for failure to state a claim upon which relief may be granted.  *See* Mot. to Dismiss, Oct. 29, 2019, D.E. 7.  Plaintiffs opposed the Motion.  *See* Pls.' Br. in Opp. to Mot. to Dismiss, Nov. 18, 2019, D.E. 16.  Defendants, who are represented by the same attorney, filed a single brief in opposition to Plaintiffs' Motion to Remand and in further support of Cresskill Hills' Motion to Dismiss.  *See* Br. in Supp. of Defs.' Opp. to Pls.' Mot. to Remand and Def. Cresskill Hills, LLC's Reply to Pls.' Opp. to Mot. to Dismiss, Dec. 2, 2019, D.E. 23.  Plaintiffs thereafter filed their reply brief in support of their Motion to Remand, which also purports to serve a sur-reply to Cresskill Hills' Motion to Dismiss.  *See* Pls.' Reply Br., Dec. 30, 2019, D.E. 27.  The Undersigned's consideration of the parties' submissions is limited to those in support of and in opposition to the Motion to Remand.

That said, "[t]he removing party bears a 'heavy burden of persuasion' towards showing that a non-diverse party was fraudulently joined." *Mersmann v. Cont'l Airlines*, 335 F. Supp. 2d 544, 547 (D.N.J. 2004) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992)). "Joinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment." *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009) (quoting *In re Briscoe*, 448 F.3d at 217). A claim is "colorable" when it is not "wholly insubstantial and frivolous." *Batoff*, 977 F.2d at 852. In other words, "[i]f there is even a *possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court . . . ." *Brown*, 575 F.3d at 326 (quoting *Batoff*, 977 F.2d at 851) (emphasis added).

In making that determination, the Court "must resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). Although the Undersigned may consider limited "reliable evidence that the defendant may proffer to support the removal," the Court must be cautious not to wade into an analysis of the merits of Plaintiffs' claims. *In re Briscoe*, 448 F.3d at 220. The threshold jurisdictional inquiry at hand "is far different from the summary judgment type inquiry." *Id.* "Indeed, even the standard of review applied on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is 'more searching than that permissible when a party makes a claim of fraudulent joinder.'" *Lappe v. Target Corp.*, No. 15-0007, 2016 WL 6305949, at *5 (D.N.J. Oct. 27, 2016) (quoting *Batoff*, 977 F.2d at 852). Accordingly, the Undersigned reviews the factual allegations of the Complaint, limited record evidence submitted with the Notice of Removal, and applicable legal principles to determine

whether Plaintiffs' claims against Cresskill Hills are so "wholly insubstantial and frivolous" such that BJ's Wholesale Club may properly invoke the subject matter jurisdiction of this Court. *Batoff*, 977 F.2d at 852.

Against that backdrop, the Undersigned holds that the negligence claims against Cresskill Hills are at the very least colorable. "The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." *Robinson v. Vivirito*, 86 A.3d 119, 124 (N.J. 2014). It is well-recognized in commercial leaseholds that "a landlord has a duty to exercise reasonable care to guard against foreseeable dangers arising from use of those portions of the rental property over which the landlord *retains control*." *J.H. v. R&M Tarliareni, LLC*, 216 A.3d 169, 180 (N.J. 2019) (quoting *Scully v. Fitzgerald*, 834 A.2d 1110, 1114 (N.J. 2004) (emphasis in original); *see also Michaels v. Brookchester, Inc.*, 140 A.2d 199, 201 (N.J. 1958) ("[I]t is now settled that the landlord owes a duty of reasonable care with respect to the portions of a building which are not demised and remain in the landlord's control.").

Provisions within a commercial lease that delegate responsibility for maintenance of all or parts of the demised property may function to shift the duty from the landlord to the tenant. *See Shields v. Ramslee Motors*, -- A.3d --, 2020 WL 370514, at *5 (N.J. Jan. 23, 2020) (holding that the landlord had no duty to maintain a driveway because the operative lease agreement unambiguously delegated the duty to maintain the property to the tenant as if it were the "de facto owner"); *Geringer*, 908 A.2d at 843 (holding that the landlord owed no duty to maintain an interior stairway within the demised space "in light of the applicable lease provisions and the surrounding circumstances"); *McBride v. Port Auth. of N.Y. and N.J.*, 685 A.2d 520, 522 (N.J. Sup. Ct. App. Div. 1996) (holding that "there is no landlord liability" for personal injuries suffered on the leased

premises "due to a lack of proper maintenance or repair, when the lease unquestionably places responsibility for such maintenance or repair solely upon the tenant").

A commercial landlord's liability may nonetheless extend "to cases in which the landowner [has] no control over the dangerous condition and the condition was not located on its property." *Monaco v. Hartz Mountain Corp.*, 840 A.2d 822, 831 (N.J. 2004). That is so because "whether [a commercial landlord] owes a duty of reasonable care toward another [person] turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." *Lappe*, 2016 WL 6305949, at *4 (alterations in original) (quoting *Monaco*, 840 A.2d at 833). "That inquiry involves 'identifying, weighing and balancing several factors [including] the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.'" *Monaco*, 840 A.2d at 833 (quoting *Hopkins v. Fox & Lazo Realtors,* 625 A.2d 1110, 1116 (N.J. 1993)); *see also Shields*, 2020 WL 370514, at *7-8 (applying *Hopkins* factors in addition to control test). At bottom, "the test to determine a landlord's responsibility is highly situation-specific and fact-intensive, more suitable for a motion [for] summary judgment or trial than a motion to dismiss." *Lappe*, 2016 WL 6305949, at *5; *see also Shields*, 2020 WL 370514, at *8 (reinstating the trial court's grant of summary judgment); *Geringer*, 908 A.2d at 846 (affirming in part and reversing in part the trial court's grant of summary judgment).

Here, Plaintiffs allege that Defendants had a duty to waterproof and otherwise maintain the roof of the Property, and that their failure to do so may have caused the slippery condition that resulted in Kevin Amoruso's injuries. *See generally* Notice of Removal, Ex. A, Counts One, Three, and Four, D.E. 1-1. For example, the well pleaded allegations of the Complaint, while broad, assert that the negligence included "fail[ure] to maintain the roof" [and] "fail[ure] to

8

properly water seal and/or otherwise maintain the roof[.]" *Id.* at ¶ 4(k), (l). With respect to the language of the Lease, Plaintiffs contend that there is no clear and unambiguous delegation of responsibility of the putative dangerous condition—the leaky roof. Pls.' Br. at 4, 6, 11. Plaintiffs further assert that a question of fact remains over whether Cresskill Hills adequately inspected the roof to prevent the alleged defect. *Id.* at 10.

Defendants' arguments to the contrary all go to the underlying merits of Plaintiffs' claims and would require the Undersigned to engage in a factual analysis that would go to the heart of the cause of Plaintiffs' injuries. *See, e.g.*, Defs.' Br. at 2 ("Plaintiffs' arguments fail because Plaintiffs have not provided sufficient factual predicates to show that the landlord's failure to maintain the roof caused the Plaintiff's accident."); *id.* at 4 (noting that a post-accident incident report states that "the water was on the ground from an electronic 'floor scrubber'" and arguing that "[n]owhere does the report indicate that the water related in any way to the roof"). The Third Circuit has instructed that at this stage, the Undersigned must accept as true Plaintiffs' allegations that Cresskill Hills failed to maintain, inspect, and repair the roof and cannot resolve Defendants' fact-based challenges to those claims. *See Boyer*, 913 F.2d at 111. Given that posture, the Undersigned finds that Plaintiffs' claims are not "wholly insubstantial or frivolous." *Batoff*, 977 F.2d at 852.

As for the putative delegation of responsibility for maintenance of the Property, the Undersigned declines Defendants' invitation to consider the terms of the Lease just as the District Court did on analogous facts in *Lappe*:

> Defendants ask the Court to look beyond the face of the Complaint and consider the lease between [the tenant] and [the landlord] as evidence that [the landlord] was not responsible for the maintenance or repair of the portion of the property where [the plaintiff] was injured. Defendants argue that based on the terms of the lease alone, the Court can determine that [the landlord] is exempt from liability for any personal injuries that may occur within the premises of [the tenant's] store to [the tenant's] invitees. The Court finds this

9

> argument unpersuasive for two reasons: (1) such a determination would require the Court to step beyond the threshold jurisdictional issue at hand into a decision on the merits and (2) even if the Court were to find that [the landlord] was not responsible for maintenance and repair within [the tenant's] store, Defendants have not addressed the other factors that must be considered in determining a commercial landlord's duties.

*Lappe*, 2016 WL 6305949, at *5. So too here, Defendants contend that the Lease unambiguously delegates the duty to maintain the interior of the Property to BJ's Wholesale Club, and therefore, Cresskill Hills cannot be held liable as a matter of law. *See* Notice of Removal, ¶ 24. That argument overlooks the allegations of the Complaint pointing to negligent maintenance of the roof, which according to Section 7.2, was not part of the delegation of the duty to maintain the demised premises. It is for the state court on remand to determine the scope of Defendants' respective duties and the cause of the accident.

### IV.  CONCLUSION

For the reasons set forth above, the Undersigned respectfully recommends the District Court grant Plaintiffs' Motion to Remand. The parties have fourteen days to file and serve objections to this Report and Recommendation. *See* 28 U.S.C. § 636; L. Civ. R. 72.1(c)(2).

**Dated: February 3, 2020**

*s/ Michael A. Hammer*
**United States Magistrate Judge**